PEABODY v. PEABODY.

Divorce—Extreme Cruelty—Profanity.

Testimony of the wife in a suit for divorce, corroborated only as to minor and unimportant matters, that the defendant used profane language, was inattentive when she was ill, used intoxicating liquors, complained about household expenses, and refused to accompany her to church,

was insufficient to require the court to grant a divorce on the ground of extreme and repeated cruelty.

Appeal from Ionia; Davis, J. Submitted January 15, 1914. (Docket No. 81.) Decided December 19, 1914.

Bill by Florence E. Peabody against John W. Peabody for divorce. From a decree for defendant, complainant appeals. Affirmed.

*R. A. Hawley,* for complainant.

*Scully & Davis,* for defendant.

BIRD, J. Having been denied a decree of divorce in the circuit court, complainant appeals to this court for relief. In her bill she charges defendant with extreme cruelty. The parties were married in December, 1904, and separated in June, 1910. During that time they lived upon defendant's farm, a few miles distant from the city of Ionia. When they separated, complainant went to her mother's home in Ionia, taking with her their only child, a boy of four years. Defendant remained on the farm. The extreme cruelty alleged consists principally of a free use of profanity, lack of attention at the time of her confinement, grumbling over household expenses, refusal to accompany her to church, staying out late nights, visiting houses of ill fame, using abusive and profane language to her, using intoxicating liquors, and, on one occasion, just prior to her leaving, with personal violence.

The complainant's case in chief was not a strong one. Upon cross-examination, much of her direct testimony was explained and modified. As illustrative of this, she stated upon cross-examination that, while defendant grumbled about the household expenses, he always purchased what she requested, and that a

credit was established by him at a store 2½ miles away, from which she had authority to order supplies over the phone, and that on several occasions she did so, and the supplies were brought to her by some of the neighbors.

It appeared that, while defendant was disinclined to attend church, he opened the way for her to attend by furnishing her a driving horse and offering to care for the child. His staying out late nights was explained by the fact that he was a stock buyer, and loaded and shipped his cattle at night at the city of Ionia, several miles away. She had no knowledge of defendant's visiting houses of ill fame, and she admitted that her charge was based upon the suspicion of herself and mother. The only instance that complainant knew of defendant's intoxication was when he was confined to the house and suffering with blood poison in his arm. The doctor brought some whisky, and on one occasion he took too much of it and became intoxicated. She had seen him at other times when she thought he had been drinking. The extent to which complainant testified that he was addicted to the use of profanity was not corroborated by any other witnesses. The personal violence occurred while defendant was ill with blood poisoning. It was not serious. Her testimony shows·that he was not as attentive as he should have been during her confine-. ment, but at the time her mother was with her and had sole charge of her care.

Passing over defendant's denials and explanations of her charges, and the testimony of her own witnesses, we think her own testimony falls short of making a case of extreme cruelty under the statute. Her witnesses corroborated her testimony in some of its phases, but not on any of the more serious charges. And it appears from her own testimony that defendant furnished her a comfortable home, dressed her in

keeping with their station in life, provided a good table, finished paying for her piano, which she had bought before marriage, and, aside from the things complained of, he was generally kind to her.

The record also shows that the defendant respected and loved his wife, and that, after she left his home, he, in company with one of the neighbors, went to Ionia to her mother's home to see her and induce her to return. When complainant's mother saw them approaching the house, she informed defendant that he could not come in, and ordered and pushed him off the premises. The complainant, however, came out and talked with them in the street. The defendant expressed regret over their differences and begged her to return, but she replied that she would not do so. It appears that complainant's mother was opposed to the marriage, and it is charged by counsel that she was "the fly in the ointment." However this may be, a reading of the record convinces us that the mother was not very helpful in keeping the parties together. We are of the opinon that the chancellor arrived at the proper conclusion when he denied complainant the relief prayed for.

The decree may be affirmed. No costs will be allowed either party in this court.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.